11th
Court of Appeals

                                                                  Eastland,
Texas

                                                             Memorandum
Opinion

 

June Sigler, as Next Friend for Faye Aylene
Arthur

Appellant

Vs.                   No.  11-02-00351-CV B  Appeal from Baylor County

Joe
Mendoza, Jr., M.D.

Appellee

 

This appeal arises from a medical malpractice
action.  June Sigler, as next friend for
Faye Aylene Arthur, filed suit against Dr. Joe
Mendoza on September 13, 2001.[1]  Sigler alleged that Arthur was a patient
under Dr. Mendoza=s care
from October 2, 1997, until February 11, 2000. 
Arthur was also a resident of Westview Care
Center during much of this period.[2]  Sigler asserted that Arthur suffered repeated
falls while a resident at Westview Care Center which
caused personal injuries to Arthur. 
Sigler alleged in her pleadings that Dr. Mendoza breached the applicable
standard of care by failing to provide adequate orders for the medical care and
skilled nursing services required by Arthur.

In an effort to comply with the expert report
requirements of TEX.REV.CIV.STAT.ANN. art. 4590i, '
13.01 (Vernon Supp. 2003), Sigler filed a report prepared by Dr. Perry Starer, M.D., a 
physician from New York.[3]  On August 12, 2002, Dr. Mendoza filed a
motion to dismiss the suit on the ground that Dr. Starer=s report did not contain the elements
required by Article 4590i, section13.01(r)(6). 
In response to Dr. Mendoza=s
motion to dismiss, Sigler filed a motion requesting a 30-day extension as
provided by Article 4590i, section 13.01(g) to file an amended expert
report.  After conducting a hearing on
both motions, the trial court granted Dr. Mendoza=s
motion to dismiss and denied Sigler=s
motion for extension.  Sigler raises two
points of error attacking the trial court=s
rulings.  We affirm.

Sigler asserts in her first point of error that the
trial court erred in ruling that Dr. Starer=s report did not constitute a
sufficient expert report under Article 4590i, section 13.01.  Article 4590i, section 13.01 contained a
comprehensive scheme governing the filing of health care liability claims. In American
Transitional Care Centers of Texas, Inc. v. Palacios, 46 S.W.3d 873, 877
(Tex.2001),  the supreme court made the
following comments with respect to the obligations imposed by Article 4590i,
section 13.01: 

[I]n
section 13.01, the Legislature requires medical‑malpractice plaintiffs,
within 180 days of filing suit, either to provide each defendant physician and
health‑care provider with an expert report and the expert=s curriculum vitae, or to nonsuit the claims.    
TEX.REV.CIV. STAT.  ANN. art.
4590i, '
13.01(d).  If the plaintiff fails within
the time allowed either to provide the expert reports and curriculum vitae, or
to nonsuit the case, the trial court must sanction
the plaintiff by dismissing the case with prejudice, awarding costs and
attorney=s fees to
the defendant, and ordering the forfeiture of any applicable cost bond
necessary to pay that award.   Id.
' 13.01(e).  If the plaintiff does timely file a report,
the defendant may move to challenge the adequacy of the report, and the trial
court must grant the motion if Ait
appears to the court ... that the report does not represent a good faith effort
to comply with the definition of an expert report.@  Id. '
13.01(l).  The statute defines an
expert report as Aa written
report by an expert that provides a fair summary of the expert=s opinions ... regarding applicable
standards of care, the manner in which the care rendered ... failed to meet the
standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.@  Id. '
13.01(r)(6).  If a trial court determines
that an expert report does not meet these statutory requirements and the time
for filing a report has passed, it must then dismiss with prejudice the claims
against the defendant who has challenged the report.  Id. '
13.01(e).[4]  

 

A trial court=s
decision to dismiss a lawsuit under Article 4590i, section 13.01 is reviewed
for abuse of discretion.  American
Transitional Care Centers of Texas, Inc. v. Palacios, supra at 875.  The supreme court=s
opinion in Palacios sets out the standards for reviewing the adequacy of
an expert report:








The issue for the trial court is whether Athe report@
represents a good‑faith effort to comply with the statutory definition of
an expert report.  Id. ' 13.01(l).  That definition requires, as to each
defendant, a fair summary of the expert=s
opinions about the applicable standard of care, the manner in which the care
failed to meet that standard, and the causal relationship between that failure
and the claimed injury.  Id. ' 13.01(r)(6).  Because the statute focuses on what the
report discusses, the only information relevant to the inquiry is within the
four corners of the document.

 

Under subsections 13.01(l) and (r)(6), the
expert report must represent only a good‑faith effort to provide a fair
summary of the expert=s
opinions.  A report need not marshal all
the plaintiff=s proof,
but it must include the expert=s
opinion on each of the elements identified in the statute.  See Hart v. Wright, 16 S.W.3d 872, 877
(Tex.App.‑‑Fort Worth 2000, pet. denied).
In setting out the expert=s
opinions on each of those elements, the report must provide enough information
to fulfill two purposes if it is to constitute a good‑faith effort.  First, the report must inform the defendant
of the specific conduct the plaintiff has called into question.  Second, and equally important, the report
must provide a basis for the trial court to conclude that the claims have
merit.  See 4 S.W.3d at 865 (Taft,
J. dissenting); Wood v. Tice, 988 S.W.2d 829, 830 (Tex.App.‑‑San
Antonio 1999, pet. denied) (noting that one of the purposes of article 4590i is
to deter frivolous claims).

 

A report that merely states the expert=s conclusions about the standard of
care, breach, and causation does not fulfill these two purposes.  Nor can a report meet these purposes and thus
constitute a good‑faith effort if it omits any of the statutory
requirements.  See, e.g., Hart, 16
S.W.3d at 877 (holding that a report was inadequate because it stated that the
patient had a heart attack and the doctor breached the standard of care,
without describing the standard of care); Wood, 988 S.W.2d at 831‑32
(holding that an expert report did not meet the statutory requirements because
it did not name the defendants, state how the defendants breached the standard
of care, demonstrate causation and damages, or include a curriculum
vitae).  However, to avoid dismissal, a
plaintiff need not present evidence in the report as if it were actually litigating
the merits.  The report can be informal
in that the information in the report does not have to meet the same
requirements as the evidence offered in a summary‑judgment proceeding or
at trial.  See, e.g.,  TEX.R. CIV. P. 166(f) (setting out the
requirements for the form and content of affidavits offered as summary‑judgment
proof); TEX.R. EVID. 802 (stating that most hearsay is inadmissible).

 

American Transitional Care Centers of
Texas, Inc. v. Palacios, supra at 878-79. 









We begin our review of Dr. Starer=s report by noting that Dr. Mendoza=s name is never mentioned in the
report.  The initial sentence of Dr. Starer=s
report reads as follows: AI
have been requested to provide [Sigler=s
counsel] a preliminary report concerning the care and treatment provided to
Faye Aylene Arthur by the staff of the Westview Care Center from October 1997 through September
1999.@  The report then contains three sections.  The first section addresses the standard of
care applicable to a long-term care nursing facility for a resident who has a
propensity to fall.  The AStandard of Care@
section then outlines various steps which the facility should follow to prevent
a resident from falling.  The second
section of the report addresses the failure of Westview
Care Center to meet the applicable standard of care.[5]   The third section of Dr. Starer=s report is labeled ATHE CAUSAL RELATIONSHIP BETWEEN THE
FAILURE OF WESTVIEW CARE CENTER TO MEET THE STANDARD OF CARE AND THE INJURIES
TO FAYE AYLENE ARTHUR.@

With respect to the omission
of Dr. Mendoza=s name
from Dr. Starer=s
report, Sigler contends that the report applies to Dr. Mendoza because of his
status as both Arthur=s
attending physician and the medical director of Westview
Care Center.  Sigler presented this
contention at the hearing challenging Dr. Starer=s report.  This contention cannot be considered in
determining the adequacy of Dr. Starer=s report, however, because the court=s review is limited to the four corners
of Dr. Starer=s
report.  American Transitional Care
Centers of Texas, Inc. v. Palacios, supra at 878.  Dr. Starer=s report does not contain any
statements which describe the standard of care applicable to Dr. Mendoza=s treatment of Sigler or identify any
deficiencies in the treatment provided by Dr. Mendoza.  The report also lacks any reference to a
causal link between Dr. Mendoza=s
treatment and Arthur=s
injuries.  Furthermore, the report does
not present any grounds by which the acts and omissions of Westview
Care Center could be attributed to Dr. Mendoza. 
Accordingly, the trial court did not abuse its discretion in ruling that
Dr. Starer=s
report did not comply with the requirements of Article 4590i, section
13.01.  Sigler=s
first point of error is overruled.

In her second point of
error, Sigler argues that the trial court erred in denying her request for an
extension of time to file a supplemental expert report.  Section 13.01(g) of Article 4590i provided: 








Notwithstanding any other provision of this
section, if a claimant has failed to comply with a deadline established by
Subsection (d) of this section and after hearing the court finds that the
failure of the claimant or the claimant=s
attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake,
the court shall grant a grace period of 30 days to permit the claimant to
comply with that subsection. A motion by a claimant for relief under this
subsection shall be considered timely if it is filed before any hearing on a
motion by a defendant under Subsection (e) of this section. 

 

A trial court=s
decision to grant or deny the grace period provided by Article 4590i, section
13.01(g) is also reviewed for abuse of
discretion. Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex.2003).   By denying Sigler=s
request to invoke the grace period, the trial court implicitly determined that
Sigler=s failure
to file an adequate report was the result of intentional or conscious
indifference rather than an accident or mistake.  A court must examine the knowledge and acts
of the claimant to determine if the failure to file an adequate report was the
result of intentional or conscious indifference.  Walker v. Gutierrez, supra at
64.  

Sigler based her request for the grace period on
the contention that her counsel mistakenly believed that Dr. Starer=s
report complied with the requirements of Article 4590i, section 13.01.[6]  This assertion is in the nature of a mistake
of law.  The supreme court held in Walker
that an act of a party that could be characterized as a mistake of law will not
always be a sufficient excuse under the statute.  Walker v. Gutierrez, supra at
64.  The expert report at issue in Walker
failed to include  two of the three
elements required by Article 4590i, section 13.01(r)(6).  Walker v. Gutierrez, supra at 64. The
court held that, when a claimant files a report that omits one or more of the
required elements, a purportedly mistaken belief that the report complied with the statute will not
negate a finding of intentional or conscious indifference.  Walker v. Gutierrez, supra at 65.  Unlike the report at issue in Walker,
Dr. Starer=s
report references the three elements required by Article 4590i, section
13.01(r)(6).  However, Dr. Starer=s
report does not expressly state how the statutory elements applied to Dr.
Mendoza=s care
and treatment of Arthur.  Given the
absence of any mention of Dr. Mendoza in Dr. Starer=s report, the trial court did not abuse
its discretion in determining that Sigler=s
failure to file an adequate expert report was the result of intentional or
conscious indifference.  Sigler=s second point of error is overruled.








The judgment of the trial court is affirmed.

 

W. G. ARNOT, III

CHIEF JUSTICE

 

April 1, 2004

Not designated for publication. 
See TEX.R.APP.P. 47.2(a).

Panel
consists of:  Arnot,
C.J., and

Wright,
J., and McCall, J.











     [1]Dr.
Mendoza is the only health care provider named as a defendant in the suit.





     [2]The
record indicates that Westview Care Center is a
long-term care nursing facility.





     [3]Although
applicable to this case, Article 4590i was repealed effective September 1,
2003; and the subject matter is now governed by TEX. CIV. PRAC. & REM. CODE
ANN. ch. 74 (Vernon Pamph.
Supp. 2004). Matters regarding expert reports are now specifically governed by
Section 74.351. 





     [4]As
noted previously, the expert report requirements of Article 4590i have been
replaced by Section 74.351.  Although the
applicable time period for filing an expert report has now changed, the
requirement for filing an expert report continues to exist under the current
statute.





     [5]The
second section reads: AWestview Care Center failed to meet the applicable standard of
care.  Specifically, Westview
Care Center failed to take the steps referenced above [in the AStandard of Care@
section].@





     [6]Sigler
presented this assertion in her motion requesting the 30-day grace period.  She supported this contention with an
affidavit prepared by her counsel. 
Counsel stated in the affidavit that he believed Dr. Starer=s report constituted a good faith effort to comply with
the statute.